UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| LISA MCCARLEY, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ]  6:09-CV-00426-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

Plaintiff, Lisa McCarley, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Ms. McCarley timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. McCarley was forty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has the equivalent of a high school education, having attained her GED. (Tr. at 420.) Her past work

experiences include employment as a roofer, a restaurant manager, and a cook. *Id*. at 433. Ms. McCarley claims that she became disabled on June 15, 2001, due to residuals from a stroke and mitral valve prolapse. *Id*. at 50, 74, & 86.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's

impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. McCarley did not meet the nondisability requirements for a period of

disability and DIB and was insured through December 31, 2006.  (Tr. at 410-413.)  He further determined that Ms. McCarley has not engaged in substantial gainful activity since the alleged onset of her disability.  *Id*.  According to the ALJ, Plaintiff's mild lumbar degenerative disk disease without stenosis; mild cervical disc disease; mitral valve prolapse; status post transient ischemic attach; and depression are considered "severe" based on the requirements set forth in the regulations.  *Id*. at 412.  However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  *Id*. at 413.  The ALJ did not find Ms. McCarley's allegations to be totally credible, and he determined that she has the following residual functional capacity: a reduced range of light exertional activity with certain physical and mental limitations.  *Id*. at 414.

     According to the ALJ, Ms. McCarley is unable to perform any of her past relevant work, she is a "younger individual," and she has a high school education or equivalent as those terms are defined by the regulations.  *Id*. at 420.  He determined that Plaintiff having transferability of skills "is not an issue in this case."  *Id*.  The ALJ found that Ms. McCarley has the residual

functional capacity to perform a significant range of light work. *Id*. Even though Plaintiff cannot perform the full range of light work, the ALJ used Medical-Vocation Rule 202.21 and the testimony of the vocational expert as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as small products assembler, production assembler, laundry folder, packing-line worker, and hardware assembler. *Id*. at 421. The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through December 31, 2006, the date last insured." *Id*.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d

1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Ms. McCarley alleges that the ALJ's decision should be reversed and remanded for improperly relying on the opinion of the consultative examiners rather than her treating physicians.  (Doc 9 at 17.)  Plaintiff contends that the ALJ improperly "presume[d] that the opinions of the treating neurologist and all other physicians other than the consultative examiner are in error."  *Id.*  A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary."  *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R. §§ 404.1527(d).  Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1)

treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). Finally, events that occurred after an examination can be used to cast doubt on the validity of that opinion. *See Crawford*, 363 F.3d at 1160 (citing events two weeks and five weeks after the relevant examination).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their

opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c). A consultative examiner's opinion is subject to the same tests as a treating physician; if the opinion is inconsistent with the record or the physician's notes, the ALJ may give it less weight. *See Crawford,* 363 F.3d at 1160 (evaluating consultative examiner's opinion in light of contemporaneous examination by another doctor). Furthermore, because a consultative examiner sees a patient on one occasion rather than on an on-going basis, the opinions derived from such an examination are "not entitled to great weight." *Id.*

Plaintiff's argument stems primarily from the findings of Dr. Otero in July 2004 that Plaintiff could only stand, walk, and sit for one hour at a time, and that she could only push or pull occasionally with the right arm and never with the left arm. (Tr. at 275-76.) He further found that she could never climb, balance, stoop, kneel, crouch, crawl, reach, handle, or feel. *Id.* In July 2005, Dr. Otero opined that Plaintiff had trouble finding

employment because "she has had significant balance problems and headaches, as well as left arm and leg tingling and paresthesias." *Id.* at 105.

The ALJ, however, appropriately rejected these findings because they are inconsistent with Dr. Otero's own treatment records. In October of 2003, Dr. Otero noted, "Strength is symmetrical in the upper and lower extremities. There is only a minimal degree of hyperreflexia noticeable on the left arm in comparison to the right, but, again, this is quite minimal. The sensory examination is normal . . . Range of motion of the cervical spine is unremarkable without any elicitation of crepitation or pain." *Id.* at 202. As to her depression, Dr. Otero noted that her "generalized anxiety is still normal" and that she had only "a mild degree of depression." *Id.* In June 2004, Dr. Otero made virtually the same findings, recommending continued treatment with Zoloft, Inderal, and Aspirin. *Id.* at 290.

These findings are consistent with those of Plaintiff's consultative physicians. In June 2005, Dr. Norwood found no limits on Plaintiff's abilities to stand, walk, and sit, and found that she could consistently lift thirty pounds. *Id.* at 304. Dr. Frank Thomas found that Plaintiff's headaches were

not severe enough to warrant anything other than Tylenol.  (*Id.* at 163.) Surgery was never recommended for Plaintiff's back problems, and Plaintiff was proscribed no medications for her neck and back pain until after December 31, 2006, her last date insured.  See *id.* at 182, 354, 358, 448. Dr. Whitehead examined Plaintiff for her alleged mental problems.  Dr. Whitehead opined that Plaintiff had only mild limitations in her abilities to respond to supervisors, co-workers and customers and to perform the other requirements of employment, a finding consistent with Dr. Otero's notes regarding her depression.  *Id.* at 314-15, 202.  The ALJ considered these limitations in determining that Plaintiff could perform light work with limitation.

It is apparent to the Court that the ALJ properly weighed the opinions of all the physicians, both consultative and treating, to reach a conclusion that was appropriate given Plaintiff's treatment records.  Furthermore, the ALJ had sufficient cause to disregard the findings of Dr. Otero that were inconsistent with these records.  *See Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.  Thus, the ALJ's decision was supported by substantial evidence and should not be disturbed.

IV.  Conclusion.

Upon review of the administrative record, and considering all of Ms. McCarley's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 22nd day of July 2010.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671